UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANGELICA P., Plaintiff,

v.

FRANK BISIGNANO, Acting Commissioner of Social Security,[1] Defendant.

Case No.: 3:25-cv-00939-JLB

**ORDER DENYING PLAINTIFF'S MERITS BRIEF AND AFFIRMING THE DECISION OF THE COMMISSIONER**

**[ECF No. 21]**

On April 21, 2025, Plaintiff Angelica P. ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security (the "Commissioner") denying her application for disability and disability insurance benefits. (ECF No. 1.)

---

[1] Frank Bisignano, the new Acting Commissioner of Social Security as of May 6, 2025, is hereby substituted as the defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d).

Before the Court and ready for decision is Plaintiff's merits brief. (ECF No. 17.) The Commissioner filed an opposition (ECF No. 19), and Plaintiff filed a reply (ECF No. 20). For the reasons set forth herein, the Court **DENIES** Plaintiff's merits brief and **AFFIRMS** the decision of the Commissioner.

## I. PROCEDURAL BACKGROUND

On February 25, 2022, Plaintiff filed an application for disability and disability insurance benefits under Title II and Part A of Title XVIII of the Social Security Act, alleging disability beginning May 18, 2021. (Certified Administrative Record ["AR"], at 384-390.) After her application was denied initially and upon reconsideration (*id*. at 89-130, 155-163), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ") (*id*. at 165-168). An administrative hearing was held on March 22, 2024. (*Id*. at 47–88.) Plaintiff appeared at the hearing with counsel, and testimony was taken from her, as well as from a vocational expert ("VE"). (*Id*. at 47-88.)

As reflected in the hearing decision dated May 22, 2024, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 18, 2021, through the date of decision. (*Id*. at 18-41.) The ALJ's decision became the final decision of the Commissioner on March 10, 2025, when the Appeals Council denied Plaintiff's request for review. (*Id*. at 1–8.) This timely civil action followed.

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 18, 2021, the alleged onset date. (AR at 26.)

At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, bilateral shoulder osteoarthritis, cervical radiculopathy, cervical myofascial pain syndrome, cervical and lumbar disc degeneration, major depressive disorder, and generalized anxiety disorder. (*Id*. at 26-27.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (*Id*. at 28-31.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> the claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. The claimant can stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. The claimant can frequently push and pull with the bilateral upper extremities. The claimant can occasionally climb ramps and stairs; and frequently balance, occasionally stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. The claimant can occasionally reach overhead and frequently reach in all other directions with the bilateral upper extremities, and can frequently handle and finger with the bilateral upper extremities. The claimant should avoid hazards such as unprotected heights. In addition, the claimant should avoid concentrated exposure to extreme cold and extreme heat. The claimant can perform low stress work, which is defined as simple routine tasks involving simple work-related decisions and occasional workplace changes that require only brief, occasional interaction with the public. In addition, the claimant can occasionally interact with coworkers.

*Id*. at 31.

For purposes of his step four determination, the ALJ determined that Plaintiff is not capable of performing past relevant work as a cashier checker, department manager, retail store manager. (*Id*. at 39.)

At step five, based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy (*e.g.*, cleaner, retail marker, and router), the ALJ found that Plaintiff was not disabled under the law from May 18, 2021, through the date of decision. (*Id*. at 40–41.)

## III. PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's merits brief, the disputed issues that Plaintiff is raising as the grounds for reversal and remand are as follows:

(1) the ALJ's residual functional capacity assessment regarding Plaintiff's mental impairments is not supported by substantial evidence. (ECF No. 17 at 4-10.)

(2) the ALJ failed to provide clear and convincing reasons in rejecting Plaintiff's migraines and headache testimony. (*Id*. at 10-14.)

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## V. DISCUSSION

### A. The ALJ's residual functional capacity assessment regarding Plaintiff's mental impairments is supported by substantial evidence.

#### *1. Parties' Arguments*

Plaintiff contends that it is unclear what substantial evidence the ALJ relied upon in assessing her ability to interact with coworkers. For this reason, Plaintiff claims the ALJ's determination of her mental residual functional capacity is not supported. Plaintiff acknowledges that one potential source of substantial evidence is opinion evidence, but she points out that Dr. Saxby did not assess any social limitations, so that opinion could not serve as substantial support for the ALJ's social limitation RFC. (*Id*. at 5.) She noted that Dr. Steiman opined that Plaintiff had moderate limitations in maintaining social

interactions with supervisors, coworkers, and the public but he did not identify the exact nature, extent, or frequency of the work-related restrictions. (*Id*. at 6-7.) She further pointed out Dr. Koutrakos assessed moderate limitations in Plaintiff's ability to get along with coworkers and peers and to interact with the general public. (*Id*. at 8.) Because no medical source stated that Plaintiff could engage in occasional interaction with coworkers (*i*d. at 8), Plaintiff argues that the ALJ improperly "substituted his own judgment for that of a medical expert by assigning social limitations that were not supported by any medical opinion." (*Id*. at 7.) Plaintiff argues further that neither Plaintiff's own testimony nor the raw medical data serve as support for the ALJ's decision on social limitations, either. (*Id*. at 8-9.)

In opposition, the Commissioner maintains that the ALJ's RFC "finding was consistent with the medical opinions assessing moderate limitations in mental functioning." (ECF No. 19 at 16.) The Commissioner asserts, "the regulations contain no requirement that a residual functional capacity must correspond to a medical opinion, and instead direct ALJs to 'assess [the claimant's] residual functional capacity based on all the relevant evidence in your case record.'" (*Id*. at 18.) The Commission pointed out that "the ALJ observed that the medical records showed Plaintiff's social functioning was 'essentially unremarkable.'" (*Id*. (citing to AR 36, 1135, and 1788).) The Commissioner argued that "courts in the Ninth Circuit and elsewhere have rejected the argument that a residual functional capacity finding must correspond to a specific medical opinion" (*id*. at 17) and part of the ALJ's responsibility is to translate clinical findings into succinct residual functional capacity (*id*. at 19). The Commissioner contends, "Far from Plaintiff's argument, the ALJ's residual functional capacity finding was supported by substantial evidence." *Id*. at 17.

***2. Applicable Law***

A claimant's RFC "is the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) ("The RFC is an administrative assessment of the extent to which an

individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." (citation omitted)).

Under the revised regulations which apply to claims, such as this one, filed on or after March 27, 2017, an ALJ must evaluate the persuasiveness of all medical opinions in the record and articulate in the decision his or her assessment as to each. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). In evaluating the persuasiveness of a medical opinion, an ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, purpose, and extent of the treatment relationship, frequency of examinations, and examining relationship; (4) specialization; and (5) any other factors that tend to support or contradict the medical opinion, including familiarity with the other evidence in the claim. *See id*. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). Although an ALJ must consider all these factors, the only factors that the ALJ is required to discuss in his or her opinion are supportability and consistency, unless two conflicting medical opinions are both equally well-supported and consistent with the record. *See id*. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

The "most important factors" to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." *See id*. §§ 404.1520c(a), 416.920c(a); *see also Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ must "articulate . . . how persuasive" he or she finds "all of the medical opinions" from each doctor or other source, and "explain how [he or she] considered the supportability and consistency factors" in reaching these findings. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

### 3. *Analysis*

Plaintiff argues that her RFC is not supported by substantial evidence, claiming it is unclear what substantial evidence the ALJ relied upon in assessing her mental RFC. (ECF No. 17 at 4-10.) Plaintiff's challenge is limited to the social interactions component of the RFC.

During her administrative hearing before the ALJ in March 2024, Plaintiff testified that her "brain fog is the one that kills [her] and to go outside and be with the people causes [her] a lot of anxiety and the depression, the depression becomes really bad." AR 66. Plaintiff further testified that her "brain is not working right and if [she] gets stressed [she] get[s] more blah." *Id*. at 67. Plaintiff also testified that the Trans Cranial Magnetic Stimulation[2] ("TMS") did not help with her depression and anxiety and that she "couldn't take it all, exactly how it is, because [she had to go for] seven weeks, every day, three minutes. . . . [T]hey had to stop because it caused [her] a lot of pain and migraines, terrible migraines on [her] head and so, they stopped the treatment and they never keep the goal of the frequency that it is supposed to go, because it don't help at all. It caused [her] to get more pain." *Id*. at 72.

Plaintiff's mental health impairments status was assessed by three State agency medical and psychological consultants, Drs. Saxby, Steinman, and Koutrakos.

#### *i. Dr. Saxby's Observations and Opinions*

On June 27, 2022, Dr. Saxby, a state agency medical consultant, submitted an opinion that was included within Plaintiff's initial disability determination. (AR 89-105.) Regarding Plaintiff's mental health, Dr Saxby determined Plaintiff had understanding and memory limitations, sustained concentration and persistence limitations, and adaptation limitations. (*Id*. at 99-101.) Dr. Saxby opined that Plaintiff was moderately limited in her

---

[2] TMS is a non-invasive treatment that uses magnetic fields to stimulate nerve cells in the brain to improve symptoms of depression. It is typically used when other depression treatments have not been effective or there are intolerable side effects. AR 2530.

ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and respond to changes in the work setting. (*Id*. at 100-102). Dr. Saxby also recorded that Plaintiff had no social interaction limitations. (*Id*. at 101).[3]

*ii. Dr. Steinman's Observations and Opinions*

On March 24, 2023, at the request of the state agency, Dr. Steinman performed a consultative psychological evaluation of Plaintiff. (*Id*. at 1132-1141.) At the evaluation, Dr. Steinman noted that Plaintiff can prepare meals independently, drive a car, use public transportation, shop at stores independently, and shower and dress herself independently. (*Id*. at 1135.) Dr. Steinman's examination indicates Plaintiff was well groomed with good hygiene, had normal posture and intact gait, had intact fine and gross motor skills, made direct eye contact, exhibited coherent speech with fluctuating rate and volume but periodically poor articulation, had a forthcoming attitude, was easy to establish rapport with, had alert sensorium, and showed intact orientation. (*Id*.)

Dr Steinman observed that Plaintiff has mild impairment with concentration (was unable to spell "WORLD backwards"), calculation ("was able to complete serial 7's (100 minus 7). 2 errors."), and memory ("Recalled three out [of] three items immediately and

---

[3] Further, Dr. Saxby expressed that Plaintiff has sufficient ability to: (1) "understand and remember simple instructions"; (2) "maintain adequate concentration, persistence and pace to complete a normal workday/week"; (3) "maintain appropriate behavior with others"; (4) "accept[] simple instructions and respond[] appropriately to feedback from supervisors"; and (5) "be aware of ordinary hazards, []make simple decisions, []utilize transportation, and []cope with the demands of a routine work like environment." (AR 102.)

two of three words after a 5-minute delay with interference," further noting that during the interview, recent/remote memory seemed to be intact). (*Id*. at 1136.) Dr. Steinman noted that Plaintiff had no impairment in abstraction and judgement. (*Id*.) However, Plaintiff's fund of knowledge was "not intact for current events"; she "was unable to correctly identify the President." (*Id*.)

Dr. Steinman opined that Plaintiff was mildly impaired in her ability to understand, carry out, apply, and remember complex detailed written and oral instructions; and in her ability to sustain concentration, attention, consistency, and persistence in work-related activity at a reasonable pace. (*Id*. at 1139.) Further, Dr. Steinman determined that Plaintiff was moderately impaired in her ability to maintain effective social interaction on a consistent and independent basis with others, including supervisors, co-workers, and the public; and to adapt to the usual stresses and pressures common to a competitive work environment, including completing a normal workday or workweek and responding and adapting appropriately to changes in a work setting. (*Id*.) Additionally, no impairment was found regarding Plaintiff's ability to understand, carry out, apply, and remember simple (one-two step) repetitive written and oral instructions, or in her ability to handle funds in her own best interest. (*Id*. at 1139-40).

*iii. Dr. Koutrakos' Observations and Opinions*

Upon reviewing the opinions of Drs. Saxby and Steinman, Dr. Koutrakos, a state agency psychological consultant, submitted an opinion on April 13, 2023, that was included in Plaintiff's disability determination at the reconsideration level. (*Id*. at 107-129.) Regarding Plaintiff's mental health, Dr Koutrakos determined Plaintiff had understanding and memory limitations, sustained concentration and persistence limitations, social interaction limitations, and adaptation limitations. (*Id*. at 122,124-25).

Dr. Koutrakos opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; interact with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond to changes in the work setting. (*Id*. at 122-25.)

Further, Dr. Koutrakos noted that Plaintiff was not significantly limited in her capacity to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (*Id*.)

Finally, Dr. Koutrakos expressed that the overall evidence suggests Plaintiff has the ability to understand, remember, and persist at simple routine tasks in settings with brief superficial interaction and simple predictable work changes. (*Id*. at 125.)

*iv. The ALJ's Decision*

The ALJ found Plaintiff to have residual functional capacity allowing her to perform the demands of light work with additional limitations. The ALJ determined that Plaintiff can perform: "low stress work, which is defined as simple routine tasks involving simple work-related decisions and occasional workplace changes that require only brief, occasional interaction with the public. In addition, [Plaintiff] can occasionally interact with coworkers." *Id*. at 31. In forming this opinion, the ALJ interpreted the reports of Drs. Saxby, Steinman, and Koutrakos, as well as the medical opinions and observations of Plaintiff's treating physicians. In reaching his conclusion, the ALJ found:

> the assessment at the reconsideration level [Steinman and Koutrakos] more persuasive than the assessment at the initial level [Saxby] because additional

> evidence was added to the case file after the initial assessment . . . . Otherwise, the State agency assessments are generally persuasive. . . [and] their findings are consistent with the medical evidence of record, which they cited and summarized in support of their assessments. . . . [T]he mental status examinations show a few significant abnormalities that support similar limitations, but the mostly normal findings contradict greater limitations.

*Id*. at 37.

The ALJ reasonably interpreted Dr. Steinman's findings of moderate impairment in Plaintiff's ability to maintain effective social interaction on a consistent and independent basis with others, including supervisors, co-workers, and the public to find that Plaintiff could perform low stress work with limited social interactions. Further, Dr. Steinman's examination indicates Plaintiff was well groomed with good hygiene, made direct eye contact, exhibited coherent speech, and was easy to establish rapport with. (*Id*. at 1135.) Overall, Dr. Steinman's examination supports limiting Plaintiff to simple routine work with the social restrictions articulated by the ALJ.

In reaching his conclusion, the ALJ correctly noted that Dr. Steinman's opinion was consistent with, and supported by, Plaintiff's treatment records. (*Id*. at 38.) The ALJ found Dr. Steinman's examination "supports limiting the claimant to simple routine work . . . however, the findings are inconsistent with greater limitations because they are mostly mild and normal." *Id*. at 37. The Court agrees. Plaintiff's examinations consistently showed good grooming, normal behavior, appropriate dressing, pleasant and cooperative demeanor, normal speech, appropriate mood, logical concentration, intact memory, normal fund of knowledge, and good or fair impulse control, insight and judgment. *See id*. at 1440, 1463, 1572, 1684, 1788, 1806-07, 1825, 1866-67, 1960-61, 2765, 2842, 2866, 2901, 3035, 3053-54, 3070, 3088, 3110, 3163, 3179, 3197, 3213, 3233, 3256, 3274, 3307, 3334, 3362, 3377, 3391, 3405, 3429, 3455, 3477, 3492, 3501, 3523, 3538, 3579, 3627, 3791, 3833-34. No more than moderate difficulties regarding interacting with the public or coworkers were recorded. *See id*.

As to Dr. Koutrakos, the ALJ stated that he had "reviewed [Plaintiff's] records and found that she could perform simple routine work," adding that Plaintiff was "limited to brief superficial interaction and simple predictable work changes." *Id*. at 37. Dr. Koutrakos's findings of moderate limitations in mental functioning are consistent with the ALJ's determination that Plaintiff could engage in occasional interactions with coworkers.

The fact that no medical source specifically stated that Plaintiff could engage in occasional interactions with coworkers does not change this conclusion. *See e.g., Gregory F. v. O'Malley,* No. 2:23-CV-00721-NJK, 2024 WL 2275178, at *4 (D. Nev. May 17, 2024) (rejecting argument that an RFC had to correlate to medical opinion, explaining "[c]onsidering the evidence and assessing an RFC that accounts for the limits of what work Plaintiff can do is the essence of what the ALJ does."). Indeed, the regulations direct ALJs to "assess [claimant's] residual functional capacity based on all the relevant evidence in [his/her] case record" 20 C.F.R. § 404.1545(a), which the ALJ did.

Here, the ALJ based his RFC on the relevant evidence in his case record. In support of this determination, the ALJ cited objective examinations and other diagnostic techniques which showed mostly mild and normal findings. *See* AR at 1440, 1463, 1572, 1980, 2290, 2350, 2583, 3292, 3345, 3537-38, 3765. Additionally, as noted by the ALJ, the medical evidence shows routine psychiatric medication management and psychotherapy through most of the period at issue. Over a ten-month treatment period, during visits with her treating psychiatrist, Dr. Victor Chavira, Plaintiff regularly alleged severe symptoms associated with anxiety and depression, with fluctuating symptoms and occasional improvement, but made no mention of social interaction difficulties. *See e.g., id*. at 2065, 2083, 2221, 2310, 2483, 3511, 3597.

Based on the foregoing, the Court finds the ALJ supported his mental RFC findings by setting out his reasoning and the evidentiary support he used (including examination findings and conservative treatment history) to determine Plaintiff's capacity for work despite her impairments. (*Id*. at 36.) The examination findings and conservative treatment history records identified by the ALJ constitute substantial evidence to support his

conclusion that Plaintiff can perform low stress work that is limited to brief, occasional interactions with the public and coworkers.

***4. Conclusion***

The Court concludes that the ALJ's did not err in his RFC assessment regarding Plaintiff's ability to occasionally interact with members of the public and coworkers and his assessment was supported by substantial evidence. Accordingly, the Court finds that the ALJ reasonably interpreted the medical opinions of moderate mental limitations to find that Plaintiff could perform low stress work with certain social interaction limitations.

**B. The ALJ provided clear and convincing reasons in rejecting Plaintiff's migraines and headache testimony**

***1. Parties' Arguments***

Plaintiff contends that the ALJ failed to provide clear and convincing reasons in rejecting her migraine and headache testimony. In support, Plaintiff asserts that the ALJ merely summarized the medical evidence without performing any analysis as to how the evidence undermined her allegations. (ECF No. 17 at 12.) And Plaintiff argues that the ALJ failed to recognize that the record supports the severity of the migraines and headaches she alleged and wrongly relied on Plaintiff's ability to work after being diagnosed with migraines. (*Id*. at 12-13.)

In opposition, the Commissioner argues that the ALJ considered Plaintiff's alleged limitations, accounted for some within his finding, and reasonably determined that some of Plaintiff's allegations were inconsistent with the medical and other evidence in the record. (AR 6-14.)

***2. Applicable Law***

The "key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Charter,* 112 F.3d 1064, 1067 (9th Cir. 1997). "When an [ALJ] determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment

which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015.) "An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: [claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ is not "required to credit [claimant's] subjective complaints merely because they were recorded in his physicians' records." *Sager v. Colvin*, 622 F. App'x 629 (9th Cir. 2015) (unpublished) (citing *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1195 (9th Cir. 2004)). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

***3. Analysis***

Plaintiff alleged she was disabled due to migraine headaches, pain and mental impairments. AR 429, 572.

During her administrative hearing, Plaintiff testified that she "wake[s] up with really bad headaches and sometimes [she has] migraines that will stay for three or four days and then nauseous." (*Id*. at 67.) Plaintiff further testified that her headaches are bad, explaining, "Let[s] say the pain level sometimes goes to a seven, to an eight, and if I don't take any pain medicine for the headache, my migraine comes back too. It activates my migraines significantly[.]" (*Id*. at 76.) Plaintiff described having migraines once or twice a month, asserting that she sometimes has to stay in a dark room for one or two days because she takes medication for her migraines. (*Id*.) And Plaintiff maintained that "[i]f

the pain doesn't go [away] for two hours, [she has] to take another two, but it will kick [her] sometimes for three days with the migraine and it comes." *Id*. Plaintiff further testified that she suffers from headaches every day that do not go away. (*Id*. at 77.) Plaintiff also testified that she takes pain medication for her migraines but was unable to remember its name. (*Id*.)

The ALJ considered Plaintiff's alleged limitations and determined some of her allegations were not consistent with the objective medical evidence in the record. Indeed, the ALJ determined that:

> the medical records show several diagnosed impairments that are acute or mild and controlled with routine, conservative treatments, such that the objective evidence shows no more than minimal work-related limitations resulting from these impairments for a continuous 12 months. These nonsevere impairments include . . . migraine with aura . . . . Additionally, she has had migraines since 2004, so this does not limit her ability to work.

*Id*. at 27.

*i. Plaintiff's testimony is not consistent with her medical records*

Based upon her medical records, the ALJ discounted Plaintiff's testimony pain testimony, including headache pain. Specifically, the ALJ stated:

> Next, in May and June of 2021, the claimant reported worsening pain, such that she could not do movements with her two arms, she had constant headaches, and she had unrelenting dizziness and nausea (Ex. 7F/347, 370, 400, 403). However, the clinical examination showed only mild deficits in range of motion at the cervical spine and shoulders (right worse than left) with intact strength, sensation, and reflexes (Ex. 7F/353). Furthermore, the MRI of the spine showed only mild changes in the neck (Ex. 7F/403). Moreover, the record on June 2, 2021 indicates that her pain was manageable with exercise, yoga, and nortriptyline (Ex. 7F/370). She continued conservative treatments with medication and physical therapy (Ex. 7F/403, 405). This evidence is inconsistent with the severity of symptoms and limitations that she alleged.

AR at 33. The ALJ concluded that Plaintiff's

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .

*Id*. at 32. If supported by substantial evidence, this can be a clear and convincing reason for rejecting symptom testimony.

As an initial matter, the Court notes that there is no medical source opinion addressing whether migraines had any, let alone a significant, impact on Plaintiff's ability to do basic work activities. Nowhere in the four medical opinions are migraines, or headaches more generally, mentioned. In Dr. Saxby's report, migraines and headaches are absent from the list of impairments alleged and discovered. *See id*. at 89-105. Similarly, migraines and headaches absent from the list of allegations, although "[h]istory of migraine headaches but no evidence of intractable migraines" is noted in the findings of fact and analysis of evidence section of Dr. Koutrakos' medical evaluation. *Id*. at 107-129. Likewise, Dr. Steinman's mental evaluation includes the notation "mental and physical allegations, as listed by the [Plaintiff]: 'Fibromyalgia and Depression.'" *Id*. at 1132-41. Finally, in Dr. Kartha's internal medicine evaluation, migraines and headaches are absent from the list of chief complaints. *Id*. at 1142-48.

Substantial evidence supports the ALJ's conclusion that the medical record was inconsistent with the severity of the limitations Plaintiff described in her testimony. Although Plaintiff relies upon her medical record to support the severity of the migraines and headaches she alleges (ECF No. 17 at 13), there is a noticeable absence of treatment notes regarding Plaintiff's migraines, with the Court finding only two treated migraine events. With respect to the first, on April 17, 2020, on a telephone call, Plaintiff self-reported that her "head hurts more, especially at night," Plaintiff was diagnosed with Migraine with Aura, and a prescription for Nortriptyline was submitted. AR 1367-68.

The second event occurred in November 2022, when Plaintiff sought medical help for a migraine that lasted longer than a week. *See id*. at 2791. On November 15, 2022, Plaintiff emailed her emailed her primary care physician, Dr. Hazra, informing him that she had been experiencing a really bad migraine and asking if he could prescribe her medication. (*Id*. at 2791.) Two days later, Plaintiff again emailed Dr. Hazra regarding medicine for migraine asking him to prescribe something for her migraine, because it was

getting worse, her body was in pain, she couldn't stand up because of increased dizziness, and she was having a hard time sleeping. (*Id*. at 2790.). The next day, Plaintiff called Kaiser's Call Center Advice Nurse, and the call notes include: "Headache for 8 days, has nausea, sweating, lightheadedness, photophobia. Taking Excedrin, Tylenol, Ibuprofen, and Naltrexone-not helping." (*Id*. at 2812.) An ancillary order was entered by Dr. Hazra, diagnosing Plaintiff with "Migraine with Aura (primary)" and submitting a prescription for Rizatriptan. (*Id*. at 2814.) That same day, a video visit also took place to discuss Plaintiff's migraine headache with Plaintiff reporting she had constant pain around her eyes and jaws for about 8 days; she felt like she saw flashes and felt like passing out when she stood up; and she couldn't tolerate noise or lights. (*Id*. at 2815-16.) On November 23, 2022, Plaintiff again emailed Dr. Hazra regarding medicine for a migraine, explaining that she was supposed to go back to work on November 26, 2023, requesting another letter extension, and reporting that the migraine medicine was helping a little. (*Id*. at 2788.) Dr. Hazra submitted a prescription for Maxalt)[4]. No other instances of Plaintiff seeking medical treatment for migraines are reported in her medical records.

---

[4] Other than these two events for which Plaintiff sought medical care for migraines, there were these additional references to a history of headaches/migraines in Plaintiff's medical records, referenced in the context of broader complaints about body pain. On May 27, 2021, in a secure message exchange with Dr. Isabela Tejeda, Plaintiff self-reported that her pain was getting stronger, she could not move either of her arms, and her headaches were more constant. (AR 347.) In another secure message exchange, this time with Dr. Chrisopher Lipinski, Plaintiff made a passing reference to migraines stating "[s]ometimes I can't bathe, change, comb my hair, [p]ain in my muscles, joints, bones throughout my body caused me a lot of stiffness, [f]atigue, [n]ausea and vertigo if I forced myself it hurts more and causes me more pain and fatigue with migraines." *Id*. at 3529. And in a subsequent secure message chain with Dr. Baker on January 5, 2023, regarding a recommendation for a new primary care physician, Plaintiff stated:

> I'm still crying and I'[ve] been with migraines I could move my legs hurts more and my hips lower back is with a lot pain and my shoulders hurts. . . . I'[ve] been very depress[ed] after all that and migraines are really bad. I['ve] canceled my TMS for 2 days.

As to Plaintiff's reliance on other entries in her medical record to support her allegations regarding the severity of her migraines and headaches, the Court determines this reliance is misplaced. For example, Plaintiff cites the brain MRI she underwent, but the treatment notes from the video visit she attended on May 20, 2021, when the MRI was ordered, note that Plaintiff complained of vertigo associated with nausea that had been ongoing for a week. Plaintiff also reported having neck and upper back pain and had not been to work "since Tues due to pain and feeling off balance." *Id*. at 1572. The treating physician determined it was reasonable to get an MRI "with patient history of migraine and new vertigo and feeling off balance." *Id*. at 1573. This MRI referral provides minimal, if any, support for Plaintiff's allegations surrounding the severity of her migraines and headaches, as her ongoing vertigo appears to be the primary reason for it being scheduled.

Plaintiff also contends that on May 27, 2021, "she contacted her provider again, reporting that her headaches and associated symptoms were ongoing and worsening" ECF No. 17 at 13. However, the call notes from Plaintiff's call to the AACC, Call Center Advice indicate that her key symptoms "r shoulder, neck and headaches, 8/10 symptoms started ongoing, worse past 3 days" AR 729, 1592, with the reported complaint recorded as "neck problems." (*Id*. 729-30, 1592-93.) Again, this visit provides minimal, if any, support for Plaintiff's allegations surrounding the severity of her migraines and headaches. Likewise, Plaintiff's self-reporting that she was "still having headaches" to her physical therapist does not support the severity of the migraines and headaches she alleges. (*Id*. at 1733.)

Similarly, Plaintiff incorrectly suggests that her December 16, 2021, visit to the emergency room supports her allegations. ECF No. 17, at 13. Plaintiff sought treatment for dizziness and headache, reporting that while attempting to take off a dressing from her lacerated finger she began to feel dizzy and lightheaded and passed out. (AR 1181.)

---

*Id*. at 3321.

Plaintiff thought she may have hit her head, likening the headache she was experiencing to migraines in the past. (*Id.*) A CT scan was performed and the treating physician determined that Plaintiff fainted in response to the pain she experienced by removing a bandage. (*Id*. at 1186.) Thus, this visit provides minimal, if any, support for Plaintiff's allegations surrounding the severity of her migraines and headaches.

In sum, Plaintiff's subjective allegations regarding the severity of her pain and her ability to work are not supported by her medical records. The absence of objective medical evidence is a supported basis for the ALJ's rejection of Plaintiff's symptom testimony. *See, e.g., Rosel A. v. Saul,* No. 20cv1098-MSB, 2021 WL 2588156 at *6 (S.D. Cal., June 23, 2021) ("a lack of support from medical evidence is a factor the ALJ may consider in his analysis of a plaintiff's testimony, but it cannot be the sole basis for rejecting it."); *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). *See also* 20 C.F.R. § 404.1529(c)(3)(v) (the treatment a claimant seeks and receives is an important indicator of the intensity and persistence of the claimant's symptoms). But because an ALJ may not disregard a claimant's testimony "solely because it is not substantiated affirmatively by objective medical evidence," (*see Robbins v. Soc. Sec. Admin*, 466 F.3d 880, at 883 (9th Cir. 2006), this reason in and of itself is not a sufficient basis for the ALJ's adverse credibility finding. The ALJ was thus required to articulate at least one other clear and convincing reason to discount Plaintiff's pain testimony.

*ii. Plaintiff's past work history was not consistent with her testimony*

Another clear and convincing reason identified by the ALJ for rejecting Plaintiff's symptom testimony is her history of working after the onset of migraines. (AR 27.) Plaintiff alleged she became disabled in May 2021. (*Id*. at 26.) But as the ALJ correctly pointed out, her medical records indicate that she has experienced migraine headaches since 2004. (*Id*. at 1439 (clinical notes include Plaintiff's first complaints of migraine in

2004)). *See also id*. at 2247, 2288, 2537 2763, 2839, 3137. Since she began complaining of migraines in 2004, Plaintiff's work activity and earnings record indicate that she was gainfully employed until 2021. (*Id*. at 408.) In other words, Plaintiff worked for 15 years, notwithstanding her migraines, which provides substantial evidence to support this as a clear and convincing reason for the ALJ to reject the symptom testimony. *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (claimant's "work history provides substantial evidence to support the ALJ's decision.").

Plaintiff also argues that her work history cannot serve as a reason for rejecting Plaintiff's migraine symptom testimony because the ALJ did not rely on this reason for rejecting Plaintiff's symptom testimony with respect to depression (2011 onset) or lumbar disc disease (2015 onset). (ECF No. 17 at 12-13.) Plaintiff provides no authority in support of this argument, and the Court does not find it persuasive. Different impairments present differently, progress differently, and impede the ability to work differently. The fact that the ALJ did not find Plaintiff's history of working after the onset of depression or lumbar disc disease to be a basis to reject Plaintiff's symptom testimony as to those impairments does not mean the ALJ could not reject Plaintiff's testimony about her migraine symptoms for this reason.

*iii. The ALJ did not articulate inconsistency with Plaintiff's daily activities as a basis for rejecting her headache symptom testimony*

The Commissioner argues that the ALJ properly discounted Plaintiff's symptom testimony based upon inconsistency with her activities of daily living. (ECF No. 19 at 10.) Nowhere in the hearing decision did the ALJ discuss Plaintiff's activities of daily living in connection with her headache/migraine testimony, and this Court is constrained to review only the reasons the ALJ asserts. *See Garrison v. Colvin* 759 F.3d 995, 1009 (9th Cir. 2014) ("[Courts] review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). An ALJ must identify the symptom testimony being discounted. *Hunter-Brown*, 806 F.3d at

494 (for a court to perform a review, the testimony found not credible must be identified); *Maria T. L. v. Bisignano,* No. 2:25-cv-01859, 2026 WL 40897, at *5 (C.D. Cal., Jan. 5, 2026) (the specific portions of the Plaintiff's testimony being discounted must be identified). The Commissioner cannot provide *post hoc* reasons to support a decision not articulated by the ALJ. *Bray v. Comm'r of Soc, Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [courts] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ–not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Contrary to the Commissioner's argument, inconsistency with activities of daily living is not a basis upon which the ALJ relied for discounting Plaintiff's symptom testimony related to her headaches/migraines. Accordingly, the Commissioner's argument cannot provide a clear and convincing reason to support the ALJ's conclusion.

#### ***4. Conclusion***

Based on the foregoing, the Court finds the ALJ gave clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's migraines and headaches testimony. Thus, the Court concludes that the ALJ did not err in discounting Plaintiff's subjective symptom testimony regarding the severity and frequency of her migraines, as the record illustrates that: (1) her migraines have remained longstanding and constant, predating her alleged disability onset date; and (2) her medical record does not support her allegations.

## VI. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's merits brief and **AFFIRMS** the decision of the Commissioner. The Clerk is directed to enter judgment affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: September 25, 2026

Jill Burkhardt

Hon. Jill L. Burkhardt
United States Magistrate Judge